UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSHUA PETTIS,

    Defendant.

CASE NO. MJ19-5038

**DETENTION ORDER**

The Court has conducted a detention hearing under 18 U.S.C. § 3142(e)(f)(g), and concludes there are no conditions which the defendant can meet which would reasonably assure the defendant's appearance as required or the safety of any other person and the community.

The defendant is charged with Possession of Controlled Substances with Intent to Distribute. Dkt. 1, Complaint, at p. 1. This charge triggers the rebuttable presumption of detention, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. §§ 3142(e)(3)(A). Dkt. 6, Motion for Detention, at 1-2. The complaint further alleges that the offense involved 500 grams of a mixture or substance containing a detectable amount of methamphetamine and 50 grams or more of actual methamphetamine. And the complaint alleges that the offense involved 100 grams or more of a mixture or substance containing a detectable amount of heroin. Dkt. 1 at 2, 6.

DETENTION ORDER - 1

The presumption operates to shift the burden of production to the defendant. *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). The prosecution has the burden of persuasion. *Id.*

If the defendant proffers evidence to rebut the statutory presumption, this does not mean the presumption has been erased; it simply means the presumption is an evidentiary finding that militates against release, and is weighed along with the other factors identified in 18 U.S.C. § 3142(g). *United States v. Hir,* 517 F.3d at 1086. The four factors are: 1. Nature and seriousness of the charges; 2. Weight of the evidence against the defendant; 3. History and characteristics of the defendant; and 4. "Nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4). The Bail Reform Act recognizes that release should be the normal course, and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). In evaluating whether the defendant poses a serious potential for dangerousness, it is not necessary for the Government to produce, or for the Court to rely on, evidence of prior convictions for violent crimes. *United States v. Hir,* 517 F.3d at 1091-92; *United States v. Rodriguez,* 950 F.2d 85, 88-89 (2d Cir. 1991).

**FINDINGS OF FACT AND STATEMENT OF REASONS FOR DETENTION**

The Court reviewed the documents in the electronic docket for this matter, including the allegations in the Complaint (Dkt. 1) and the First Supplemental Pretrial Report (Dkt. 10). The Court also considered information provided by the parties during the hearing, including testimony by DEA Special Agent Errin Jewell.

In this case, applying the first factor -- charges against the defendant are extremely serious. The complaint alleges that law enforcement investigators learned from an individual identified as "SOS", that in January of 2019 Mr. Pettis purchased methamphetamine and heroin from this person, the supplier known as "SOS". Dkt. 1, Complaint, at 3. During a February 20, 2019 search of Mr. Pettis' residence in Aberdeen, Washington, the investigators advised him of his Miranda warnings; the defendant led them to his bedroom, and pointed to a safe located under his bed.

Mr. Pettis opened the safe, upon request of the investigators, and inside there was approximately 860 grams of suspected heroin and 110 grams of suspected methamphetamine, along with $1325.00 in U.S. Currency. Dkt. 1 at 4. The defendant pointed out a second safe, and after he opened it, investigators discovered approximately 475 grams of suspected methamphetamine, smaller amounts of heroin and a white powder (unidentified). Later, investigators field tested the suspected heroin and methamphetamine, and these tests produced positive results for each controlled substance. *Id.*

Investigators asked Mr. Pettis where he obtained the methamphetamine and heroin. Dkt 1 at 4. He stated that he purchased bulk methamphetamine and heroin in the past from the supplier known as "SOS". *Id.* Mr. Pettis indicated that SOS had been arrested, and after that the defendant obtained drugs from a Seattle or Tacoma supplier. Dkt. 1 at 4-5. During the search of the defendant's bedroom, investigators found ammunition, drug paraphernalia, packaging material, a digital scale, bags containing suspected methamphetamine residue, and indicial in the name of Joshua Pettis; and there were two handguns found – a Colt .45 semi-automatic 1911-style pistol and a Springfield Armory .40 caliber semi-automatic pistol -- under the mattress in Mr. Pettis' bedroom. One of those firearms was loaded. *Id.*

During the search, the investigators arrested Mr. Pettis, his girlfriend, and other occupants of the residence. Dkt. 1 at 5. One of those other occupants was found to have smaller amounts of heroin in their possession. The authorities asked where the heroin came from; they admitted that Mr. Pettis was their source of drugs. *Id.* They also indicated to the investigators that Mr. Pettis lived at the residence at no cost; and they disclosed this was an arrangement that happened because he was their source who supplied narcotics to the other occupants. *Id.*

Regarding the second factor, the weight of the evidence, this factor is difficult to assess at this stage, and the Court does not rely heavily on this factor. The Court takes into account that the defendant made inculpatory statements to law enforcement and a large quantity of illegal controlled substances were found in two safes located in the defendant's bedroom.

Regarding the third factor, history and circumstances of the defendant, the defense has proffered evidence that he has a stable residence in Aberdeen that he could move into during pretrial supervision, with a friend who is also his employer, Mr. Henning. Dkt. 10, First Supplemental Pretrial Services Report at 1-2. The defense also proposed (during the hearing) that Mr. Henning could serve as a third party custodian to assist with supervising Mr. Pettis in the community. Yet, Mr. Henning has a history of convictions for drug-related offenses, and admitted that although he has been a non-user for about two years, he has a history of methamphetamine addiction. Dkt. 10 at 2.

In addition, Mr. Henning disclosed that the home is owned by his mother, who is unable to talk because of a medical condition. Dkt. 10 at 2. There are firearms in the home – six or seven rifles, and a few handguns, stored in a safe in Mr. Henning's mother's office. *Id.* The pretrial services investigation states that law enforcement is concerned there may be illegal drug activity associated with this proposed residence and the property where it is located. *Id.*

Mr. Pettis has family and ties to the community, but on balance those ties are not positive or substantial. The pretrial services supplemental report (Dkt. 10) illuminates additional circumstances of the defendant. He has an ex-wife, and three children (two of them were the children of his previous marriage) and none of the three children have contact with or live with him. Mr. Pettis has brothers and sisters; his parents passed away about five years ago. Dkt. 10 at 2-3. He has a history of illegal drug use; he stated that his alcohol use has not been a problem. Dkt. 10 at 3-4. He has been to inpatient and outpatient drug treatment. Dkt. 10 at 4.

Mr. Pettis has been employed for about two to four years as a mechanic at Harbor Salvage – the business that Mr. Henning and his mother are associated with. Dkt. 10 at 2-3.

The fourth factor, dangerousness to others and to the community, is present in this situation. The defendant's criminal history spans several years, and includes a 2016 conviction for Possession of a Dangerous Weapon, a 2014 conviction for Assault in the Fourth Degree, and several convictions in 2011-12, including convictions for Criminal Trespass in the Second Degree, for controlled substance violations (methamphetamine) and First Degree Theft. Dkt. 10 at 5-6. In addition, the facts describing the current offense (Dkt. 1, Complaint), show that Mr. Pettis was residing in a home in which a large quantity of drugs was hidden in two safes in the defendant's bedroom; his housemates allowed him to stay for free as long as he supplied them with illegal drugs; and there were weapons, including one pistol that was loaded, in the defendant's bedroom. Also, Special Agent Jewell testified during the detention hearing: After his arrest but before he was transported to federal custody, the defendant made a phone call from the Grays Harbor Jail, during which he told the person on the other end of the phone call to find a third person, and "roll him down the river".

When there is clear and convincing evidence that the defendant poses a danger to others and to the community, or there is a preponderance of the evidence showing that the defendant is a flight risk or may fail to appear for court hearings, the Court must next analyze whether there is a "condition or combination of conditions [that] will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e); *United States v. Hir,* 517 F.3d at 1092-93. The Court finds that the defendant has not overcome the presumption of detention.

Although he had proposed three different addresses for release, the proposed residential placement with Mr. Henning was the only placement that could be confirmed. The Court finds that Mr. Henning's residence is not appropriate. There is an adult with a medical condition who may be vulnerable at this residence – Mr. Henning's mother, who cannot speak due to a disability. There are multiple firearms under the control of Mr. Henning's mother at the residence; if the defendant and Mr. Henning persuaded, pushed, or otherwise successfully obtained access from Mr. Henning's mother so the defendant could use these weapons, this would be dangerous to the community and to pretrial services officers visiting the residence. And, Mr. Henning has a history of drug abuse and criminal convictions.

Even if the Court were to order intensive electronic monitoring, that would not mitigate the risk that the defendant would potentially obtain access to weapons or illegal drugs – those items could be brought to the Henning property by others.

In addition, the defendant made statements that can be fairly interpreted as threatening to a third party during a phone call while in jail – this shows that even when he is confined, he conducts himself in a manner that demonstrates that he poses a serious risk of dangerousness to others and to the community. The Court also finds by a preponderance of the evidence that Mr. Pettis would likely fail to be responsible in following orders of the Court, or making future court

DETENTION ORDER - 6

appearances, based on the fact that the defendant has a history of failure to appear for Court, and a history of violating the conditions of previous court supervised release orders. Dkt. 10 at 4-6.

It is therefore **ORDERED**:

(1) Defendant shall be detained pending trial and committed to the custody of the Attorney General for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences, or being held in custody pending appeal;

(2) Defendant shall be afforded reasonable opportunity for private consultation with counsel;

(3) On order of a court of the United States or on request of an attorney for the Government, the person in charge of the correctional facility in which Defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding; and

(4) The Clerk shall provide copies of this order to all counsel, the United States Marshal, and to the United States Probation and Pretrial Services Officer.

DATED this 26th day of March, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge